**PLAINTIFF'S DRAFT PROPOSED REMEDIAL PLAN RELATED TO THEIR REQUEST FOR A TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION**

1. **IDENTIFICATION OF INDIVIDUALS ELIGIBLE FOR IMMEDIATE TRANSFER TO FURLOUGH OR HOME DETENTION**: Within three days of the date of the order, the Illinois Department of Corrections will identify all people in the physical custody of IDOC and who are vulnerable due to underlying medical condition or age, within these categories:

    i. People who have a pre-existing condition and have an increased risk of serious harm or death from COVID-19 as result of that condition. Pre-existing conditions include but are not limited to people with respiratory conditions including chronic lung disease or moderate to severe asthma; people with heart disease or other heart conditions; people who are immunocompromised as a result of cancer, HIV/AIDS, or any other condition or related to treatment for a medical condition; people with chronic liver or kidney disease or renal failure (including hepatitis and dialysis patients); people with diabetes, epilepsy, hypertension, blood disorders (including sickle cell disease), inherited metabolic disorders; people who have had or are at risk of stroke; and people with any other condition specifically identified by CDC either now or in the future as being a particular risk for severe illness and/or death caused by COVID-19, and who are eligible for medical furlough pursuant to 730 ILCS 5/3-11-1.

    ii. People who are medically vulnerable and have an increased risk of serious harm or death from COVID-19 because they are 55 years of age and older and who are eligible for medical furlough pursuant to 730 ILCS 5/3-11-1.

    Within three days of identifying individuals eligible for furlough, or transfer, IDOC shall collect information from each individual for identifying potential host sites.

2. Within 7 days of the date of this order, the IDOC will use its discretion to transfer individuals identified pursuant to the above to medical furlough or home detention:

    Every person identified pursuant to paragraph 1 of this order with an available host site will be removed from the correctional center via the mechanism determined by IDOC as most appropriate (such as medical furlough or transfer to home detention) unless the IDOC determines, with the approval of the special master, that an individual's furlough or transfer would pose a substantial danger to the physical safety of an identifiable person or persons that outweighs the threat to the individual's health and the public health threat posed by their continued incarceration. Assessment of the safety risk must be based on an

individualized analysis, and not categorical exclusions (except those excluded offenses for furlough or transfer mechanisms under the law). In the event that the IDOC rejects a furlough or transfer to home detention to any person identified in Paragraph 1, IDOC will document their justification with specific and individualized concerns including those related to the individual's institutional history and background.

3. **FORMATION OF THE COVID-19 EMERGENCY RECORD REVIEW TASK FORCE.** Class Counsel will, at IDOC's request, form a Task Force comprised of up to 150 pro-bono attorneys, legal assistants, social workers, law students and other qualified individuals, who report to the Special Master. The purpose of the Task Force is to assist the IDOC in conducting the record review necessary to effectuate the terms of this Order. The Task Force will function as follows:
    a. Class Counsel will work with the IDOC to recruit qualified Task Force Members, who have demonstrated high ethical standards and the requisite skills needed to contribute to the Task Force;
    b. IDOC will execute the required agreements to allow the Task Force to access and review the relevant records. This may include, but is not limited to, submitting an Agreed Order to this Court that will permit Task Force Members to review protected health information as permitted by the Health Insurance Portability and Accountability Act of 1996 Public Law 104-191 (1996) ("HIPPA"). Task Force Members shall work under the supervision and control of the Special Master and shall be required to execute requisite confidentiality agreements;
    c. Task Force members shall prepare one to two page summaries of the files of each individual reviewed regarding the individual's medical condition, current disability, institutional record, relevant history and background. These summaries will be based on a form developed jointly by Class Counsel and the IDOC;
    d. The Class Counsel and the IDOC shall collaborate on the form and content of Task Force member training. No Task Force member shall begin their record review without first completing this training;
    e. IDOC will rely on the Task Force summaries to review each individual and make the decision required pursuant to ¶ 2. Nothing in this Agreed Order limits the IDOC's authority to order furlough, transfer to home detention and/or release prior to the completion of any task force summary or separate from the process required by this Order.

4. **Appointment of a Special Master**. The Parties agree to the appointment of a Special Master, to be jointly selected by the parties. The Special Master shall have extensive experience in management and a general familiarity with corrections and/or the justice system and/or the public health system. The Special Master shall have the discretion to consult with individuals with expertise in corrections, public safety and public health, as needed. The Special Master shall have the following responsibilities:

   a. Reviewing IDOC's denial of medical furlough to any medically vulnerable person on the basis of public safety concerns. If the special master disagrees with the IDOC's determination, the IDOC shall grant the individual medical furlough;
   b. At the request of the IDOC, making recommendations about transfer, or furlough decision for any individual or groups of individuals;
   c. Managing and overseeing the work of the Task Force, to include but not limited to establishing strict timelines and instituting quality control procedures;
   d. Collaborating with Class Counsel to develop and distribute resources related to housing and public benefits for those who are furloughed pursuant to the terms of this Order and to deploy any resources and or/knowledge Class Counsel can offer to mitigate practical and logistical barriers.
   e. Managing the IDOC host site approval process for all class members and ensuring that the process is efficient, fair and comports to the requirements of this Order.

5. **CLASS COUNSEL ACCESS AND REPORTING**. The IDOC shall provide to Class Counsel the names, IDOC numbers and facilities of every person in IDOC custody who is eligible for release, transfer and medical furlough under the terms of this Order, and shall provide Class Counsel with the names of any such person who it deems not eligible for relief under Paragraph 2 for any reason, including lack of a host site. The IDOC will further provide Class Counsel with the names and prisoner IDOC numbers of all people medically furloughed and/or transferred to home detention pursuant to this Order every 48 hours. The IDOC and Class Counsel will collaborate to seek and necessary HIPPA related orders from the Court to facilitate information sharing.